WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Tucson Electric Power Company, | ) | CV-12-00323-TUC-JGZ |
| Petitioner, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Daimler Capital Services LLC; LDVFI TEP LLC; Alterna Springerville LLC; MWR Capital Inc.; and Pacific Harbor Capital Inc. (Collectively, the "Owner Participants"); and Wilmington Trust Company, as Owner Trustee, and William J. Wade, as Co-Trustee, Under Separate Trust Agreements Dated as of December 15, 1986, As Amended, With Each Owner Participant, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

Pending before the Court is TEP's Petition to Confirm Appraisal/Arbitration Award. (Doc. 1.)  Respondents have filed a Memorandum in Opposition to TEP's Petition (Doc. 27), and TEP has replied. (Doc. 29.)  For the following reasons, the Court will enter judgment in favor of Respondents.

## Factual and Procedural Background

The facts necessary to resolution of this case are not disputed by the parties.  This matter arises out of the appraisal of a power plant, the Springerville Unit 1 ("SGS1").  Tucson Electric Power ("TEP") filed this Petition on April 26, 2012, seeking an order confirming an appraisal award delivered December 6, 2011.  (Petition, Doc. 1, ¶ 1.)  The Respondents in this matter include, Daimler Capital Services LLC, LDVFI TEP LLC, Alterna Springerville LLC, MWR Capital Inc., and Pacific Harbor Capital Inc. (collectively

1   the "Owner Participants"). (*Id.* ¶ 7.) Respondents Wilmington Trust Company and William

2   J. Wade (collectively "Lessor") are the Owner Trustee and Co-Trustee, respectively.[1] (*Id.*

3   ¶ 10.)

4        SGS1 is a unit at a coal-fired steam-electric generation station near Springerville,

5   Arizona. (*Id.* ¶ 14.)  SGS1 is connected to the interstate transmission grid, and the sales of

6   electricity from SGS1 are regulated by the Federal Energy Regulatory Commission

7   ("FERC"). (*Id.* ¶ 17.)  Wilmington and Wade hold legal title to undivided interests in SGS1,

8   and the Owner Participants are beneficiaries pursuant to separate trust agreements. (*Id.* ¶ 14.)

9   TEP leases and operates SGS1 under the terms of seven separate Amended and Restated

10   Lease Agreements, dated as of December 15, 1986, amended and restated as of December

11   15, 1992 (collectively the "Leases"), with Wilmington and Wade as Lessor. (*Id.* ¶ 15.)  The

12   Leases are substantially identical and are governed by Arizona law. (*Id.* ¶ 16.)

13        Section 19(a) of the Leases provide TEP with an option upon expiration of the Leases

14   to purchase the Lessor's undivided interest in SGS1 at "Fair Market Sales Value." (*Id.* ¶ 18.)

15   If the parties cannot agree on a Fair Market Sales Value, the Leases provide that the Fair

16   Market Sales Value is to be determined by an "Appraisal Procedure." (CITE).  Pursuant to

17   the Appraisal Procedure, if the parties cannot agree on a single appraiser then the Fair Market

18   Sales Value:

19           shall be determined by a panel of three independent appraisers

20           ... one of whom shall be selected by such Lessee, another of
        whom shall be selected by such Lessor and the third of
        whom shall be selected by such other two appraisers or, if such other

21           two appraisers shall be unable to agree upon a third appraiser
        within 20 days of their selection, by the American Arbitration

22           Association or any successor thereof.

23   (Petition, Doc. 1, ¶ 19; Doc 1-2, Exh. 2.)  Pursuant to the Appraisal Procedure, "the

24   determination of the appraiser which shall differ most from the average of the other two

25   appraisers shall be excluded, the remaining two determinations shall be averaged and such

26   average shall constitute the determination of the appraisers." (Doc 1-2, Exh. 2; Petition, Doc.

27   _____

28        [1]Pursuant to the parties' Stipulation, the Court ordered that the Owner Participants file
a response to the Petition on behalf of the Owner Trustees.  (Doc. 26.)

1   1, ¶ 21.)  The Appraiser Procedure further provided that the appraisers' "determination shall
2   be final and binding upon the parties."   (Doc 1-2, Exh. 2.)

3          Due to the parties' failure to agree on the Fair Market Sales Value of the SGS1, the
4   parties followed this procedure and each selected an appraiser: TEP selected Duff & Phelps,
5   LLC ("Duff & Phelps"), the Owner Participants selected DAI Management Consultants
6   ("DAI"), and the two party-appointed appraisers jointly selected London Economics
7   International LLC ("LEI"). (Petition, Doc. 1, ¶ 20.) Each of the three appraisers delivered
8   its report to the parties on December 6, 2011.  (Petition, Doc. 1, ¶ 22.)  Duff & Phelps
9   concluded that the aggregate Fair Market Sales Value of the undivided interests in SGS1 was
10   $200,000,000; DAI appraised the value at $442,840,269; and LEI estimated the value as
11   $169,400,000.  (Petition, Doc. 1, ¶ 22; Doc. 1-2, Exhs. 3 and 4; Doc 1-3, Exh. 5.)   DAI's
12   valuation was discarded because it fell furthest from the average of the two other valuations.
13   (*Id.* ¶ 23.)  Duff & Phelps and LEI's valuations were averaged to arrive at a Fair Market
14   Sales Value of $184,700,000.  (*Id.* ¶ 24.)

15          On December 16, 2011, TEP sent a letter to the Owner Trustee and Co-Trustee setting
16   forth the results of the Appraisal Procedure in an attached document referred to as Schedule
17   I.  (*Id.* ¶ 26.)   The letter concludes: "Accordingly, in the event that the Lessee determines to
18   exercise its option to purchase a Lessor's Undivided Interest at the end of the Primary Term
19   for the Fair Market Sales Value specified in Schedule I hereto, the Lessee will provide a
20   written notice thereof on or prior to September 1, 2013."   (Doc. 1-4, Exh. 7.)

21          On April 26, 2012, TEP filed the pending Petition to Confirm Appraisal/ Arbitration
22   Award.  (Doc. 1.)  TEP requests that the Court affirm the appraisal award under the Federal
23   Arbitration Act ("FAA").   The Owner Participants oppose the request and contend that this
24   Court is without jurisdiction to confirm the appraisal because it is not an arbitration and the
25   parties never intended it to be confirmed by a judgment.

26                                    **Discussion**

27          The FAA creates "a body of federal substantive law of arbitrability, applicable to any
28   arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v.*

3

1   *Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  The FAA applies to any "written provision

2   in . . . a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Under the

3   FAA, the term "commerce" is defined as "commerce among the several States or with

4   foreign nations."  9 U.S.C. § 1.  The SGS1 is connected to the interstate transmission grid,

5   which impacts interstate commerce, and the sales of electricity from SGS1 are regulated by

6   FERC.  Because the tentative sale of SGS1 is pursuant to a provision in a written contract

7   involving commerce, the transaction may be subject to the FAA if: (1) the parties intended

8   the appraisal to be subject to judicial confirmation under the FAA, *see* 9 U.S.C. § 9, and (2)

9   the appraisal constitutes an arbitration. *See Portland Gen. Elect. Co. v. U.S. Bank Trust Nat.*

10  *Ass'n.*, 218 F.3d 1085, 1089 (9th Cir. 2000) (discussing whether Oregon's arbitration statue

11  included appraisals within its definition). The parties' filings present three issues: (1) whether

12  their agreement conferred jurisdiction upon this Court to enter an order confirming the

13  appraisal under the FAA; (2) whether Arizona or federal law should define what constitutes

14  an arbitration; and (3) if Arizona law controls what constitutes an arbitration, whether an

15  appraisal is an arbitration under that law.  In addition, Respondents assert a fourth issue -

16  whether this case is ripe for review. Although ripeness is normally a question raised at the

17  outset, the Court finds it appropriate to first answer whether it has jurisdiction under 9 U.S.C.

18  § 9 to entertain this matter.  The Court concludes that it does not have jurisdiction, and

19  therefore declines to consider the other issues raised by the parties.

20      The FAA "does not create any independent federal-question jurisdiction." *Moses H.*

21  *Cone Mem'l Hosp.*, 460 U.S. at 25 n. 32.  "There must be diversity of citizenship or some

22  other independent basis for federal jurisdiction" before a district court can hear a matter

23  under the FAA.  *Id.*  In addition, even where independent subject matter jurisdiction exists,

24  the Court may only assert subject matter jurisdiction over the dispute if the parties intended

25  for their agreement to fall within the ambit of the FAA.[2]  *See* 9 U.S.C. § 9 (a federal court

26

27      [2]The circuit courts are split as to whether 9 U.S.C. § 9 should be characterized as a

28  venue provision concerning personal jurisdiction, *see Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 748 n. 7 (8th Cir. 1986), or as a second level subject matter prerequisite for confirmation of an award under the FAA in federal court.  *See I/S Stavborg v. National*

4

1    may only confirm an arbitration award "if the parties in their agreement have agreed that a

2    judgment of the court shall be entered upon the award made pursuant to the arbitration. . ."").

3    Accordingly, whether the parties intended the appraisal to be final raises two jurisdictional

4    inquiries that must be satisfied before the Court can enter judgment on the appraisal award:

5    (1) whether the Court has independent subject matter jurisdiction over the dispute, and (2)

6    whether there is subject matter jurisdiction under 9 U.S.C. § 9 for confirmation under the

7    FAA.

8         The Court has independent subject matter jurisdiction over this dispute pursuant to 28

9    U.S.C. § 1332(a) by virtue of the diversity of citizenship between the parties. TEP is an

10   Arizona corporation with its principal place of business in Tucson, Arizona. (Petition, Doc.

11   1, ¶ 2.) All of the Defendants are citizens of states other than Arizona. (*Id.*, ¶¶ 3-9). The

12   amount in controversy exceeds $75,000.00 as TEP seeks to confirm an appraisal award of

13   $184,700,000. (*Id.*, ¶¶ 24, 28.)

14        The Court, however, declines jurisdiction to confirm the award under 9 U.S.C. § 9.

15   Section 9 of the FAA "requires *some* manifestation of the agreement to have judgment

16   entered in the contract itself." *Okla. City Assocs. v. Wal–Mart Stores, Inc.*, 923 F.2d 791, 795

17   (10th Cir.1991) (emphasis in original). "Indeed, the mere existence of an arbitration award

18   against [Plaintiff] has neither legal significance nor creates any rights in favor of

19   [Defendants] absent a contractual provision binding [Plaintiff] to the arbitration award."

20   *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 931 (9ᵗʰ Cir. 2009). While the Ninth

21   Circuit has not expressly addressed what evidences a party's intent to invoke application of

22   the FAA, several other circuit courts have addressed this issue. Generally, whether the

23   parties intended to consent to a federal judgment on an arbitration award under the FAA

24   depends on the presence of several factors: whether the agreement at issue includes "final

25   

26   *Metal Converters*, 500 F.2d 424, 425-26 (2d Cir. 1974) (finding it immaterial that the district
     court's jurisdiction was challenged for the first time on appeal); *see also Oklahoma City*

27   *Associates v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 794 (10th Cir. 1991) ("The unambiguous
     language of § 9 leads us to believe that it creates its own level of subject matter jurisdiction for

28   confirmation under the FAA.") The Court adopts the approach of the Second and Tenth
     Circuits.

and binding" language; whether the agreement includes language stating that the parties will abide by the rules of the American Arbitration Association; whether the parties have submitted to arbitration; whether the contract is to be construed under federal law; and whether the opposing party has attempted to vacate or modify the arbitration award in federal court.[3]  *See Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 308 (4th Cir. 2008) (asserting jurisdiction under FAA where contract invoked the rules of the American Arbitration Association and stated that arbitration awards would be final); *Booth v. Hume Pub., Inc.*, 902 F.2d 925 (11th Cir. 1990) (court has jurisdiction under the FAA to enforce employment agreement providing that disputes regarding the terms of the agreement would be subject to arbitration and that arbitration would be "final and binding"); *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389-90 (7th Cir. 1981) (court has jurisdiction to confirm arbitration award under the FAA where the parties submitted to arbitration and their agreement stated that arbitration decision would be "final and binding"); *I/S Stavborg v. National Metal Converters*, 500 F.2d 424, 427 (2d Cir. 1974) (court has jurisdiction to confirm arbitration award under FAA given the term "final" used in the arbitration agreement, the parties' request for the federal court to appoint the third arbitrator, the fact that federal maritime law controlled the contract interpretation, and appellant's attempt to vacate or modify the award in federal court).

The Circuits are split on the issue of how much weight should be given to the presence of a finality clause in an agreement.  It remains an open question whether that language alone is sufficient to establish the parties' intent to invoke jurisdiction.  *See Daihatsu Motor Co., Ltd. v. Terrain Vehicles, Inc.*, 13 F.3d 196 (7th Cir. 1993) (summarizing cases and noting that courts find support not only in the language of the arbitration clause, but also in the surrounding circumstances that evidenced the parties' intent to submit the arbitration award for confirmation in the federal court); *see also Wal-Mart*, 923 F.2d at 794 (noting that

---

[3] Courts which give weight to the fact that the parties have agreed to abide by the rules of the American Arbitration Association do so because AAA Rule 47(c) states that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." *See McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983-84 n.3 (5th Cir. 1995).

1    whether a finality clause alone is sufficient to establish the parties' consent to federal

2    jurisdiction has not been decided).  In the Eighth Circuit, a boilerplate recitation of "final and

3    binding" language is insufficient proof of an agreement to have judgment entered by a

4    federal court pursuant to the FAA.  *See PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1254

5    (8th Cir. 1998).  The logic of inferring an agreement to federal jurisdiction from the existence

6    of "final and binding" language  "is questionable because § 9 requires that the parties agree

7    'in the agreement,' implying that an explicit enforcement agreement must be present in the

8    relevant written document."  *Id.* (citing 9 U.S.C. § 9 and *Wal-Mart*, 923 F.2d at 794).

9    Standing alone, "a finality clause could be interpreted to mean [that] the parties intended to

10   have the award enforced in state rather than federal court."  *Id.*  (citing *Wal-Mart*, 923 F.2d

11   at 794).  Because Congress intended for the substantive provisions of the FAA to apply only

12   when the parties affirmatively agreed that they should, the Court concludes that jurisdiction

13   is best exercised when the parties' intent can be clearly inferred based on the totality of the

14   circumstances.

15          In the present case, even assuming that the appraisal procedure set forth in the parties'

16   Leases is an "arbitration" within the meaning of the FAA, the Leases do not demonstrate that

17   the parties intended to subject an appraisal decision to judicial enforcement in federal court

18   under the FAA.  Two factors support a finding of intent: the Leases state that the appraisers'

19   determination shall be "final and binding upon the parties," and the parties have submitted

20   to the appraisal procedure.   However, the Leases are governed by Arizona law, not federal

21   law, and the leases do not invoke the rules of the American Arbitration Association.[4]

22   Moreover, the Owner Participants have not attempted to invoke the jurisdiction of the federal

23   courts in order to vacate or modify the appraisal determination.  Finally, of the various circuit

24   cases discussed herein, the present case bears the most factual similarity to *PVI*.  *PVI*

25   involved a purchase option in an agreement that provided for an expert appraisal in the event

26

27          [4]   In fact, a plain reading of the Leases suggests that the parties affirmatively rejected
     arbitration by the American Arbitration Association.  The Leases provide for an appraiser to
28   be selected by the American Arbitration Association in certain instances; presumably the
     parties could have also allocated the appraisal process to the AAA, but they did not.

of a dispute over the purchase price and that included a boilerplate finality clause. *See* 135 F.3d at 1253. After invoking the expert evaluation pursuant to the agreement, one party attempted to enforce the expert's evaluation pursuant to the FAA. *Id.* As in the present case, the agreement was devoid of any provision stating that a judgment of the court should be entered upon the expert's valuation. *Id.* The court in *PVI* declined to exercise jurisdiction under the FAA, noting that the circumstances could just as easily be construed as an agreement by the parties to enforce the award in state court. The Court finds *PVI* to be the most on-point and persuasive case available with respect to the jurisdictional issue before it. Because the Leases' provision does not expressly consent to confirmation by a federal court and the parties' actions do not imply such confirmation, this Court is without jurisdiction under the FAA to confirm the award.

## Conclusion

For the foregoing reasons, IT IS ORDERED that Petitioner's Petition to Confirm Appraisal/Arbitration Award (Doc. 1) is DENIED. This matter is DISMISSED WITH PREJUDICE. The Clerk of the Court shall close the file in this matter.

DATED this 25th day of January, 2013.

Jennifer G. Zipps
United States District Judge

8